No. 5, Original, October Term, 1950. NEW JERSEY *v.* NEW YORK ET AL.

The Court, having considered the amended petition of the City of New York, joined by the State of New York, to which is appended the consent of the State of New Jersey, the answer filed by the State of New Jersey seeking affirmative relief and the answers filed by the Commonwealth of Pennsylvania and the State of Delaware, the evidence and exhibits adduced by the parties, the report of Kurt F. Pantzer, Esquire, Special Master, and statements from all the parties addressed to the Court

expressing the intention of the parties not to file exceptions or objections to the report, and being fully advised in the premises, now enters the following order:

I. REPORT OF SPECIAL MASTER APPROVED. The "Report of the Special Master Recommending Amended Decree," filed May 27, 1954, is in all respects approved and confirmed.

II. 1931 DECREE SUPERSEDED. The decree of this Court entered May 25, 1931 (283 U. S. 805) is modified and amended as hereinafter provided and, upon the entry of this amended decree, the provisions of the decree of May 25, 1931, shall be of no further force and effect.

III. DIVERSIONS BY THE CITY OF NEW YORK ENJOINED EXCEPT AS HEREIN AUTHORIZED. The State and City of New York are enjoined from diverting water from the Delaware River or its tributaries except to the extent herein authorized and upon the terms and conditions herein provided.

A. *Authorized Diversions.*

1. *440 M. G. D.* The City of New York may divert from the Delaware River watershed to its water supply system the equivalent of 440 million gallons daily (m. g. d.) until the City completes and places in operation its reservoir presently under construction on the East Branch of the Delaware River.

2. *490 M. G. D.* After the completion and commencement of operation of the East Branch reservoir, the City may divert the equivalent of 490 m. g. d. until the completion of its proposed dam and reservoir at Cannonsville on the West Branch of the Delaware River, provided, however, that in the event of an abnormal or unforeseeable interruption of its facilities, the City may divert in excess of the equivalent of 490 m. g. d. to meet its emergency requirements, but in no event shall such diversion impair the obligation of the City to make the releases hereinafter specified.

3. *800 M. G. D.* After the completion of the Cannons-ville reservoir, the City may divert the equivalent of 800 m. g. d.

4. *Computation of Diversion.* At no time during any twelve-month period, commencing June 1, shall the aggregate total quantity diverted, divided by the number of days elapsed since the preceding May 31, exceed the applicable permitted rate of diversion.

B. *Conditions and Obligations Imposed in Connection With Diversions and Releases by City.* The diversions and releases by the City of New York from the Delaware River shall be made under the supervision and direction of the River Master, hereinafter appointed, and shall be subject to the following conditions and obligations:

1. *Compensating Releases—The Montague Formula.* The City shall release water from its reservoirs as follows:

(a) Until the East Branch reservoir is completed and placed in operation, on the day following each day in which the average flow in the Delaware River falls short of 0.50 cubic feet per second per square mile (c. s. m.), either at Montague, New Jersey (below the mouth of the Neversink River), or at Trenton, New Jersey (0.50 c. s. m. being equivalent to a flow of 1740 cubic feet per second (c. f. s.) at Montague and 3400 c. f. s. at Trenton), the City shall release water from the Neversink reservoir at an average of 0.66 c. s. m. or 61.38 c. f. s.

(b) Upon the completion and placing in operation of the Neversink and East Branch reservoirs, the City shall release water from one or more of its storage reservoirs in the upper Delaware watershed. Such releases shall be in quantities designed to maintain a minimum basic rate of flow at the gaging station of the United States Geological Survey (U. S. G. S.) at Montague of 1525 c. f. s. (985.6 m. g. d.) until the Cannonsville project is completed and its reservoir first filled to the extent that

50 billion gallons above the lowest outlet are available for diversion and release, and of 1750 c. f. s. (1131.1 m. g. d.) thereafter. Compliance by the City with directions of the River Master with respect to such releases shall be considered full compliance with the requirements of this subsection (b).

(c) At the commencement of the calendar year following the completion and placing in operation of the Neversink and East Branch reservoirs and of each calendar year thereafter, the City of New York shall estimate and report to the River Master the anticipated consumption of water during such year to be provided for by the City from all its sources of supply. The City shall, as hereinafter provided, release in the aggregate from all its storage reservoirs in the upper Delaware watershed, in addition to the quantity of water required to be released for the purpose of maintaining the then applicable minimum basic rate of flow as hereinabove provided, a quantity of water equal to 83 per cent of the amount by which the estimated consumption during such year is less than the City's estimate of the continuous safe yield during such year of all its sources obtainable without pumping. In any such year the City's estimate of anticipated consumption shall not exceed by more than $7\frac{1}{4}$ billion gallons the actual consumption in any previous calendar year; and its safe yield in any such year, obtainable without pumping, shall be estimated at not less than 1355 m. g. d. after the Neversink and East Branch reservoirs are put into operation; and at not less than 1665 m. g. d. after the Cannonsville reservoir is put into operation. If, at any time after the completion of the Cannonsville reservoir and prior to the year 1993, the continuous net safe yield for water supply of all of the City's sources of water supply, obtainable without pumping, is increased by the development of additional sources, such

greater safe yield shall be used in determining the excess releases.

(d) The City of New York shall release the excess quantity provided for in subsection (c) at rates designed to release the entire quantity in 120 days. Commencing with the fifteenth day of June each year, the excess releases shall continue for as long a period, but not later than the following March 15, as such additional quantity will permit. Such period is hereinafter referred to as the "seasonal period." The excess quantity required to be released in any seasonal period shall in no event exceed 70 billion gallons. In releasing the excess quantity specified for any seasonal period, the City shall not be required to maintain a flow at Montague greater than the applicable minimum basic rate plus the excess quantity divided by 120 days, or in any event greater than 2650 c. f. s., nor to release at rates exceeding the capacity of its release works. The City shall in each seasonal period continue its excess releases until March 15 or until the aggregate quantity of the flow at Montague in excess of the basic rate or in excess of such higher rates as are not the result of the City's prior releases, is equal to the total specified excess quantity.

(e) The terms and conditions provided in subsections (b), (c) and (d) hereof shall continue to be applicable in all respects in the event that the U. S. G. S. gaging station at Montague shall be relocated at a point below the confluence of the Neversink River with the Delaware River.

2. *Minimum Capacity of Release Works at Reservoirs of City.* In constructing the Cannonsville reservoir, the City shall install release works of such capacity as will provide a minimum aggregate release capacity from all its reservoirs in the Delaware River watershed of not less than 1600 c. f. s. under conditions of maximum reservoir depletion.

3. *Releases to be Continued in Spite of Interference.*
In the event that any works hereafter constructed by
public or private interests in the watershed of the Dela-
ware River outside of the State of New York shall pre-
vent the proper operation of the U. S. G. S. gaging station
at Montague or interfere with the effective operation of
the above release requirements by diverting water past
the station or by intercepting the natural flow and storing
it in reservoirs with an aggregate storage capacity in
excess of 25 billion gallons, the City of New York shall
continue to make the releases above specified which
would be required in the absence of such interference,
and appropriate gaging stations shall be established for
that purpose.

4. *Inspection Permitted.* The States of New Jersey
and Delaware and the Commonwealth of Pennsylvania,
through accredited representatives, and the River Master,
shall at all reasonable times have the right to inspect the
dams, reservoirs and other works constructed by the City
of New York, to inspect the diversion areas and the in-
flow, outflow and diverted flow of such areas, to inspect
the meters and other apparatus installed by the City of
New York and to inspect all records pertaining to inflow,
outflow and diverted flow.

IV. TREATMENT OF PORT JERVIS SEWAGE. The effluent
from the sewage treatment plant at the City of Port Jer-
vis, New York, shall be treated so as to effect a reduction
of 85 per cent in the organic impurities and shall be
treated with a chemical germicide, or otherwise, so that
the B. coli originally present in the sewage shall be re-
duced by 90 per cent. Untreated industrial waste from
plants in the City of Port Jervis shall not be allowed to
enter the Delaware and Neversink Rivers. The treat-
ment of such industrial wastes shall be such as to render
the effluent practically free from suspended matter and

nonputrescent. The treatment of both sewage and industrial waste shall be maintained so long as any diversion is made from the Delaware River or its tributaries.

V. DIVERSIONS BY NEW JERSEY AUTHORIZED UNDER SPECIFIED CONDITIONS.

A. *Authorized Diversions.* The State of New Jersey may divert outside the Delaware River watershed, from the Delaware River or its tributaries in New Jersey, without compensating releases, the equivalent of 100 m. g. d., if the State shall not, prior to July 1, 1955, repeal Chapter 443 of the New Jersey Laws of 1953, and if, when the Commonwealth of Pennsylvania accepts the conditions as specified in Section 19 of that Chapter, the State of New Jersey shall join with the Commonwealth of Pennsylvania in requesting the consent of Congress to the agreement embodied in Chapter 443 of the New Jersey Laws of 1953 and an Act of the Commonwealth of Pennsylvania accepting the conditions of such New Jersey Act.

B. *Conditions and Obligations Imposed in Connection with Diversions by New Jersey.* The diversions by New Jersey from the Delaware River shall be made under the supervision of the River Master and shall be subject to the following conditions and obligations:

1. Until the State of New Jersey builds and utilizes one or more reservoirs to store waters of the Delaware River or its tributaries for the purpose of diverting the same to another watershed, the State may divert not to exceed 100 m. g. d. as a monthly average, with the diversion on any day not to exceed 120 million gallons.

2. If and when the State of New Jersey has built and is utilizing one or more reservoirs to store waters of the Delaware River or its tributaries for the purpose of diversion to another watershed, it may withdraw water from the Delaware River or its tributaries into such impound-

ing reservoirs without limitation except during the months of July, August, September and October of any year, when not more than 100 m. g. d. as a monthly average and not more than 120 million gallons in any day shall be withdrawn.

3. Regardless of whether the State of New Jersey builds and utilizes storage reservoirs for diversion, its total diversion for use outside of the Delaware River watershed without compensating releases shall not exceed an average of 100 m. g. d. during any calendar year.

VI. EXISTING USES NOT AFFECTED BY AMENDED DECREE. The parties to this proceeding shall have the right to continue all existing uses of the waters of the Delaware River and its tributaries, not involving a diversion outside the Delaware River watershed, in the manner and at the locations presently exercised by municipalities or other governmental agencies, industries or persons in the Delaware River watershed in the States of New York, New Jersey and Delaware and the Commonwealth of Pennsylvania.

VII. RIVER MASTER.

A. *Designation.* Subject to the concurrence of the Director of the U. S. Geological Survey, the Chief Hydraulic Engineer of the U. S. Geological Survey, or such other engineer of the U. S. Geological Survey as shall at any time be designated by the Chief Hydraulic Engineer, is hereby designated as River Master.

B. *Duties.* The River Master shall either in person or through his assistants possess, exercise and perform the following duties and functions:

1. *General Duties.*

(a) Administer the provisions of this decree relating to yields, diversions and releases so as to have the provisions of this decree carried out with the greatest possible accuracy;

(b) Conserve the waters in the river, its tributaries and in any reservoirs maintained in the Delaware River watershed by the City of New York or any which may hereafter be developed by any of the other parties hereto;

(c) Compile and correlate all available data on the water needs of the parties hereto;

(d) Check and correlate the pertinent stream flow gagings on the Delaware River and its tributaries;

(e) Observe, record and study the effect of developments on the Delaware River and its tributaries upon water supply and other necessary, proper and desirable uses; and

(f) Make periodic reports to this Court, not less frequently than annually, and send copies thereof to the Governors of Delaware, New Jersey, New York and Pennsylvania, and to the Mayor of the City of New York.

2. *Specific Duties with Respect to the Montague Release Formula.* In connection with the releases of water which the City of New York is required to make under Par. III–B–1 (b) of this decree, the River Master, in co-operation with the City of New York, shall, by appropriate observation and estimates, perform the following duties:

(a) Determine the average times of transit of the flow between the release works of the several reservoirs of the City and Montague and between the release works of other storage reservoirs in the watershed and Montague;

(b) Make a daily computation of what the average flow observed on the previous day at Montague would have been, except for that portion previously contributed by releases of the City or as affected by the contributing or withholding of water at other storage reservoirs, for the purpose of computing the volume of water that would have had to be released in order to have maintained precisely the basic rate on that day;

(c) Take account of all changes that can be anticipated in the flow from that portion of the watershed above Montague not under the City's control and allow for the same by making an appropriate adjustment in the computed volume of the daily release; and

(d) After taking into consideration (a), (b) and (c), direct the making of adjusted daily releases designed to maintain the flow at Montague at the applicable minimum basic rate.

C. *Distribution of Costs.* The compensation of, and the costs and expenses incurred by, the River Master shall be borne equally by the State of Delaware, State of New Jersey, Commonwealth of Pennsylvania, and the City of New York.

D. *Replacement.* In the event that for any reason the Chief Hydraulic Engineer of the U. S. G. S. or his designee cannot act as River Master, this Court will, on motion of any party, appoint a River Master and fix his compensation.

VIII. No Prior Appropriation nor Apportionment. No diversion herein allowed shall constitute a prior appropriation of the waters of the Delaware River or confer any superiority of right upon any party hereto in respect of the use of those waters. Nothing contained in this decree shall be deemed to constitute an apportionment of the waters of the Delaware River among the parties hereto.

IX. Decree Without Prejudice to the United States. This decree is without prejudice to the United States. It is subject to the paramount authority of Congress in respect to commerce on navigable waters of the United States; and it is subject to the powers of the Secretary of the Army and Chief of Engineers of the United States Army in respect to commerce on navigable waters of the United States.

X. Retention of Jurisdiction; No Estoppel. Any of the parties hereto, complainant, defendants or intervenors, may apply at the foot of this decree for other or further action or relief, and this Court retains jurisdiction of the suit for the purpose of any order or direction or modification of this decree, or any supplemental decree that it may deem at any time to be proper in relation to the subject matter in controversy. The fact that a party to this cause has not filed exceptions to the report of the Special Master or to the provisions of this decree shall not estop such party at any time in the future from applying for a modification of the provisions of this decree, notwithstanding any action taken by any party under the terms of this decree.

XI. Costs of this Proceeding. The costs of this proceeding shall be paid by the parties in the following proportions: State of New Jersey, 26⅔ per cent, City of New York, 26⅔ per cent, State of New York, 10 per cent, Commonwealth of Pennsylvania, 26⅔ per cent, and State of Delaware, 10 per cent.

*Theodore D. Parsons*, Attorney General of New Jersey, *Robert Peacock*, Deputy Attorney General, and *Kenneth H. Murray* for complainant.

*Nathaniel L. Goldstein*, Attorney General, *Wendell P. Brown*, Solicitor General, and *Edward L. Ryan*, Assistant Attorney General, for the State of New York; and *Denis M. Hurley, John P. McGrath, Jeremiah M. Evarts, James J. Thornton, Richard H. Burke* and *John Suglia* for the City of New York, defendants.

*Frank F. Truscott*, Attorney General, *George G. Chandler, Bernard G. Segal, Wm. A. Schnader* and *Harry F. Stambaugh* for the State of Pennsylvania; and *H. Albert Young*, Attorney General, and *Vincent A. Theisen*, Chief Deputy Attorney General, for the State of Delaware, intervenors.