Harmel OUELLETTE, Lila Ouellette, Clifton Browne, Edla Browne, Aldee Plouffe, Shirley Plouffe, individually and on behalf of themselves, and on behalf of all similarly situated, Plaintiffs

and

H. Vaughn Griffin, Sr., Ardoth Griffin, Alan Thorndike, Ellen Thorndike, Wesley C. Larrabee, Virginia Larrabee, F. Alfred Paterson, Jr. and Lois T. Paterson, Plaintiff-Intervenors

v.

INTERNATIONAL PAPER COMPANY.

Civil A. No. 78–163.

United States District Court, D. Vermont.

Aug. 3, 1987.

---

10. *Cf. Benton v. Maryland,* 395 U.S. 784, 791, 89 S.Ct. 2056, 2060–61, 23 L.Ed.2d 707 (1969).

Peter Langrock, and Emily Joselson, Langrock, Sperry, Parker & Wool, Middlebury, Vermont, for plaintiffs.

Spencer Knapp, Dinse, Erdmann & Clapp, Burlington, Vermont, and Roy Reardon, Robert Bourque, Jennifer Manley, and Martha Wolfe, Simpson, Thacher & Bartlett, New York City, for defendant.

COFFRIN, Chief Judge.

This class action was filed almost nine years ago by Vermont landowners to recover injunctive and compensatory relief for damages from alleged water and air pollution produced by defendant's operation of a paper mill in Ticonderoga, New York. Presently pending before the court is defendant's motion to dismiss plaintiffs' cause of action concerning the alleged air pollution. For the reasons set forth below, we DENY defendants' motion.

## I. BACKGROUND

The certified class members own property in Vermont on or near Lake Champlain and across the lake from a paper mill operated by International Paper Company, Inc. ("IPC" or "defendant"). The complaint alleges two "Causes of Action", comprised of numerous counts. The "First Cause of Action" (or the "water claims") contains allegations related to the alleged water pollution from defendant's mill. The "Second Cause of Action" relates to plaintiffs' claims for alleged air pollution damage from defendant's mill (the "air claims"), and contains two counts. Count I alleges

that the defendant's discharges into the air constitute a nuisance. Count II alleges that defendant's negligent discharge of noxious fumes and smoke from the plant caused injury to plaintiff's property and health.

On June 22, 1981 defendant filed a motion to dismiss the "First Cause of Action", or water claims. This motion was denied on February 5, 1985. *Ouellette v. International Paper Co.*, 602 F.Supp. 264 (D.Vt. 1985). At the parties' request we certified that decision for interlocutory appeal under 28 U.S.C. § 1292(b).

Upon reviewing our order denying defendant's motion to dismiss the water claims, the Second Circuit affirmed in a brief opinion. 776 F.2d 55 (1986). This ruling was appealed to the Supreme Court, which in turn recently entered an order affirming in part, reversing in part, and remanding the case for further proceedings. *International Paper Co. v. Ouellette*, — U.S. —, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987) (discussed *infra*).

While the review of our order denying dismissal of the water claims was pending before the Second Circuit, defendant filed a motion to dismiss the "Second Cause of Action" or air claims. In support of the second motion to dismiss, defendant raises arguments similar to those that we found to be unpersuasive with respect to the motion to dismiss the water claims. Specifically, defendant seeks dismissal of the air claims on two main grounds. First, IPC argues that because federal rather than state law controls disputes over interstate air pollution and Congress occupied the field of air pollution control by passing the Clean Air Act, 42 U.S.C. § 7401 *et seq.* ("CAA"), then plaintiffs' federal common law action for interstate air pollution must be barred. Alternatively, defendant contends that plaintiffs' rights have been resolved in prior proceedings between IPC and the State of Vermont.

## II. DISCUSSION

### A. *Availability of State Common Law Nuisance Claims*

Defendant argues that the interstate setting of this dispute implicates strong federal interests which preempt plaintiffs' claims. IPC's preemption argument for the air claims follows the argument defendant offered on its motion to dismiss the water claims and may be summarized as follows: Because the Supreme Court ruled in *Illinois v. Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) (*Milwaukee I*) and *Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 27 S.Ct. 618, 51 L.Ed. 1038 (1907) that federal, not state, law governs interstate air and water pollution cases, any common law nuisance claims possessed by plaintiffs must be premised upon federal law. However, as the Court held in *Illinois v. Milwaukee*, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981) (*Milwaukee II*) that the Federal Water Pollution Control Act ("FWPCA") preempted any federal common law nuisance claims for interstate water pollution, plaintiffs' federal common law nuisance claim was also preempted. IPC would further argue that because the CAA is a comprehensive regulatory act analogous to the FWPCA, then the CAA must also have preempted any federal common law nuisance claims for interstate air pollution.

■ The same basic preemption argument was rejected by the Supreme Court when it reviewed the denial of defendant's motion to dismiss the water claims. *Ouellette*, — U.S. —, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987). In *Ouellette*, the Court ruled that these same plaintiffs' state law claims concerning interstate water pollution survived passage of the FWPCA. However, the Court found that the FWPCA preempted state law to the extent that if state law is applied to an out-of-state point source then the court must apply the law of the state in which the point source is located. *Ouellette*, 107 S.Ct. at 809, 816. The Court reversed the conclusion of this court on this latter point and remanded the case for further proceedings. Thus the *Ouellette* opinion suggests that plaintiffs' state law nuisance claim for air pollution also survived passage of the CAA and the motion to dismiss the air claims should be denied.

IPC attempts to distinguish *Ouellette* through detailed analysis of the timing of the decisions in *Milwaukee I, Ohio v. Wyandotte Chemicals Corp.*, 401 U.S. 493, 91 S.Ct. 1005, 28 L.Ed.2d 256 (1971), *Milwaukee II*, and the enactment of amendments to the CAA and the FWPCA. IPC argues that while enacting the 1972 FWPCA "saving clause" (33 U.S.C. § 1365(e)) Congress might have preserved state nuisance claims because dicta in *Wyandotte* suggested that state law might govern interstate water disputes, Congress could not have contemplated saving state claims when it passed the 1970 CAA "saving clause" (42 U.S.C. § 7604(e)) one year before the *Wyandotte* decision. Thus IPC contends because at the time § 7604(e) was passed federal law controlled interstate pollution disputes, there was no state law claim to be "saved" by the CAA savings provision.

We decline to adopt this argument because in our view state law nuisance claims have always been available to *private parties* suing for damages for pollution that travels between state boundaries. The *Milwaukee I, Wyandotte,* and *Milwaukee II* decisions are noncontrolling in this case because those decisions involved states which, when acting as states, filed actions under the Supreme Court's original jurisdiction to resort to the "necessary expedient" of federal common law to obtain relief from interstate pollution. Because federalism concerns precluded the state sovereigns from resorting to state law claims, the Court applied federal common law in the *Milwaukee* dispute because it was "concerned in that case that Illinois did not have any forum in which to protect its interests unless federal common law were created." *Milwaukee II*, 451 U.S. at 325, 101 S.Ct. at 1797, citing *Milwaukee I*, 406 U.S. at 104, 107, 92 S.Ct. at 1393. Similarly, while the Court allowed the state of Georgia to pursue an action to enjoin interstate air pollution in *Tennessee Copper Co., supra,* the Court made clear that Georgia was acting "in its capacity of *qua-si*-sovereign" in which it had "an interest independent of and behind the titles of its citizens, in all the earth and air within its domain". 206 U.S. at 237, 27 S.Ct. at 619. While the Supreme Court agreed to issue the injunction in *Tennessee Copper Co.*, it did so "notwithstanding the hesitation that we might feel if the suit were between private parties". *Id* at 238, 27 S.Ct. at 619. Further, the fact that these decisions dealt only with federal common law as applied in interstate disputes between state sovereigns is reinforced by the Court's recent statement that "[t]he [*Milwaukee II*] Court left open the question of whether injured parties still had a cause of action under *state* law." *Ouellette*, 107 S.Ct. at 810 (emphasis in original), citing *Milwaukee II*, 451 U.S. at 310, n. 4, 101 S.Ct. at 1789 n. 4.

 Thus we feel that state nuisance law has always been available to private parties to resolve interstate disputes for damage to private property despite the development of federal common law for similar interstate disputes brought by states under the *parens patriae* doctrine.[1] Of

---

1. Defendant argues that the decision in *Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 58 S.Ct. 803, 82 L.Ed.2d 1202 (1938) established the principle that interstate pollution disputes are governed by federal common law, regardless of whether the plaintiff is a sovereign or private party. We do not read *Hinderlider* so broadly.

*Hinderlider* dealt with water apportionment issues and was a suit brought by a private landowner to enjoin the state engineers of Colorado from administering the La Plata River so as to deprive plaintiff of water. Plaintiff claimed a right to water under a state decree. The state engineers admitted that they had diverted the river, but claimed that they were entitled to do so under a Congressionally-approved interstate water compact entered into after the state decree relied upon by plaintiff.

The Supreme Court sided with the state engineers. The Court reasoned that the state could not grant plaintiff the right to divert more than Colorado's share of the river, which in turn was limited to the state's equitable share. As that equitable share was subject to future modification through compacts or judicial re-apportionment, the Court concluded that the plaintiff's rights under the decree were subject to the compact. Thus the presence of the compact was controlling in *Hinderlider*. No such compact exists in this case. See discussion *supra*, II-B. Moreover, while the *Hinderlider* Court referred to the federal common law governing equitable apportionment, that reference arose in a portion

course, the state law claims are still subject to preemption by federal legislation. The Supreme Court in *Ouellette* carefully reviewed the effect of the FWPCA on state nuisance claims for interstate pollution and found such suits compatible with the FWPCA's standards and procedures so long as the nuisance claim is brought pursuant to the law of the source state. 107 S.Ct. at 811–14. This approach in effect affords injured private citizens in the non-source state the same rights against the polluter enjoyed by injured private citizens in the source state. We feel that the same concerns that led the *Ouellette* Court to require application of the source state's law in interstate water disputes are equally applicable to plaintiffs' air claims. Therefore, while we find that plaintiffs' state law nuisance claim is not preempted by the CAA, under *Ouellette* we will apply New York law in hearing that claim.

### B. *Effect of Prior Proceedings*

In 1970, the State of Vermont filed an action in the United States Supreme Court against the State of New York and IPC. This action, which was filed under the Supreme Court's original jurisdiction, alleged that IPC's discharges into the air and water constituted a nuisance. After the United States intervened as a party, the case was dismissed in 1974 under two stipulated settlement agreements entered into between IPC and the State of Vermont (the "Two-Party Agreement") and between IPC, the State of Vermont, the State of New York and the United States (the "Four-Party Agreement").

■ Defendant argues that these settlement agreements bar plaintiffs' air claims. To support this contention, defendant relies upon the same arguments that we rejected with respect to its motion to dismiss the water claims, and we once again reject these arguments for the reasons stated in our prior opinion. *Ouellette*, 602 F.Supp. at 272–74.

■ In addition, IPC argues that the agreements should be binding upon plaintiffs because the Special Master indicated while sending the settlement agreements to the Supreme Court for approval that the parties intended the agreements to have the status of a compact. However, we do not find this intent expressed in the agreements. Further, as noted in our earlier opinion, the agreements specifically preserved any claims and rights of Vermont citizens and residents against any party to the Supreme Court proceeding. 602 F.Supp. at 274. Our interpretation of the scope, terms and language of the settlement agreements still convinces us that, "the State of Vermont bargained for a reduction of effluents in return for a limited covenant not to file suit itself—nothing more. The State of Vermont did not, therefore, dispose of plaintiffs' ... rights in signing the Two- and Four-Party Agreements". 602 F.Supp. at 274. The Second Circuit has approved this court's view that the contractual language contained in the agreements is sufficient to make the princi-

---

of the opinion in which the Court criticized the state court's view that Colorado, not the private landowner, had an absolute right to at least 58¼ cubic feet of water per second regardless of the amount left for New Mexico. 304 U.S. at 110, 58 S.Ct. at 811. Thus, the federal common law effected the *Hinderlider* plaintiff's water rights because those rights were derivative from the state's rights in the river. By contrast, the present plaintiffs' air claims are not directly derived from the rights of the state. This is especially true because the concept of "interstate air" has a weaker doctrinal foundation than the concept of "interstate streams", which finds its roots in the line of cases discussing equitable apportionment of interstate waters. *See e.g., Kansas v. Colorado*, 206 U.S. 46, 27 S.Ct. 655, 51 L.Ed. 956 (1907); *Wyoming v.*

*Colorado*, 259 U.S. 419, 42 S.Ct. 552, 66 L.Ed. 999 (1932) and 286 U.S. 494, 52 S.Ct. 621, 76 L.Ed. 1245 (1932); *New York v. Illinois*, 274 U.S. 488, 47 S.Ct. 661, 71 L.Ed. 1164 (1927); *Connecticut v. Massachusetts*, 282 U.S. 660, 51 S.Ct. 286, 75 L.Ed. 602 (1931); *New York v. New Jersey*, 283 U.S. 336, 51 S.Ct. 478, 75 L.Ed. 1104 (1931) and 347 U.S. 995, 74 S.Ct. 842, 98 L.Ed.2d 1127 (1954); *Nebraska v. Wyoming*, 325 U.S. 589, 65 S.Ct. 1332, 89 L.Ed. 1815 (1945); *Arizona v. California*, 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963); *Colorado v. New Mexico*, 459 U.S. 176, 103 S.Ct. 539, 74 L.Ed.2d 348 (1982) and 467 U.S. 310, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984); *see also, Missouri v. Illinois*, 180 U.S. 208, 21 S.Ct. 331, 45 L.Ed. 497 (1901) and 200 U.S. 496, 26 S.Ct. 268, 50 L.Ed. 572 (1906).

ples set forth in *Badgley v. City of New York*, 606 F.2d 358 (2d Cir.1979), *cert. den.*, 447 U.S. 906, 100 S.Ct. 2989, 64 L.Ed.2d 855 (1980) inapplicable to this case. *See, Ouellette*, 776 F.2d at 56 (2d Cir.1986).

## III. SUMMARY AND ORDER

Based on the foregoing discussion, we DENY defendant's motion to dismiss the "Second Cause of Action", but will apply New York law in hearing plaintiffs' state law claims concerning air pollution.