**MONOFLO INTERNATIONAL, INC., Plaintiff,**

v.

**Ekkehard SAHM, and Kunststoff Kontor GmbH, Defendants.**

**Civ. A. No. 89–1285–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Nov. 29, 1989.

Robert A. Vanderhye, Nixon & Vanderhye P.C., Arlington, Va., for plaintiff.

Daniel E. Johnson, David G. Baldacci, Calligaro & Mutryn P.C., Washington, D.C., for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

A threshold dismissal motion directed at Count I of plaintiff's Amended Complaint presents questions concerning the reach Section 43(a) of the Lanham Act (the "Act"), 15 U.S.C. § 1125(a),[1] and of state and federal unfair competition laws. Specifically, the following two questions are presented:

(1) Does Section 43(a) of the Act reach misrepresentations that do not pertain to any goods or services?

(2) Does the common law tort of unfair competition reach

    (i) misrepresentations that do not pertain to any goods or services, or

    (ii) threats of "unspecified and groundless criminal action"

where there is no effect on competition?

This is the second time these questions have been before the Court. The first occurred in the context of defendants' motion to dismiss plaintiff's original complaint. The Court granted that motion, but did so without prejudice because it was unclear from the original complaint whether there was any set of facts plaintiff could allege to support claimed violations of the Act and the unfair competition laws of the United States or Virginia. Plaintiff's Amended Complaint, by adding essentially no new facts, now makes clear that disposition of the motion to dismiss on the merits is appropriate.[2] For the reasons stated here, the Court concludes that the facts alleged in the Amended Complaint fail to state a cause of action under either Section 43(a) of the Act or the unfair competition laws of the United States or Virginia.

## FACTS [3]

Plaintiff, Monoflo International, Inc. ("Monoflo") is a Virginia corporation apparently engaged in the sale, *inter alia,* of collapsible plastic boxes. The corporate defendant, Kunststoff Kontor GmbH ("KKG"), is a German corporation apparently engaged, *inter alia,* in the purchase of collapsible plastic boxes. Ekkehard Sahm, the individual defendant, is a Ger-

---

**1.** The Lanham Act has recently been significantly revised to include claims for commercial defamation. *See* The Trademark Law Revision Act of 1988, Pub.L. No. 100–667, 102 Stat. 3935 (codified as amended at 15 U.S.C. §§ 1051–1127) (effective November 16, 1989). This case is governed, therefore, by the Act as it existed prior to the amendment. Thus, references here to the "Act" are to the version of the Lanham Act that existed immediately prior to the 1989 revision.

**2.** *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) ("a com-

plaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief")

**3.** It is axiomatic that the allegations in the Amended Complaint must be accepted as true for purposes of the disposition of a Rule 12(b)(6) motion to dismiss. *See, e.g., Gardner v. Toilet Goods Ass'n,* 387 U.S. 167, 172, 87 S.Ct. 1526, 1529, 18 L.Ed.2d 704 (1967); *Caddell v. Singer,* 652 F.2d 393, 394 (4th Cir.1981).

man citizen and resident and the managing director and "moving force" of KKG with respect to the acts complained of in the Amended Complaint.

At a time prior to the acts complained of, KKG purchased collapsible plastic boxes from Monoflo for resale in Europe. Monoflo claims there was never any written agreement between the parties relating to the sale of the boxes. There then came a time that Monoflo gave KKG formal notice that it would have no further dealings with KKG and, accordingly, ceased selling the plastic boxes to KKG. Thereafter, KKG, in an apparent attempt to obtain Monoflo boxes elsewhere, sent a letter to an American distributor for Monoflo requesting to purchase Monoflo boxes and stating that it was Monoflo's exclusive European sales agent. This representation, according to Monoflo, was false and was made for the purpose of inducing Monoflo's distributor to sell Monoflo boxes to KKG when Monoflo had declined to make such sales. Monoflo also claims, in conclusory fashion, that this representation affected commerce, damaged Monoflo and constituted a false designation of origin in violation of Section 43(a) of the Act.

Additionally, Monoflo contends that KKG and Sahm "misrepresented" to Monoflo that Monoflo was in breach of various KKG–Monoflo agreements for which KKG demanded damages. In this connection, Sahm, acting as the "driving force" behind KKG, threatened Monoflo with "unspecified and groundless criminal action" unless Monoflo settled its contractual dispute with KKG. According to Monoflo, KKG and Sahm knew the threats of criminal action were baseless and were made for the purposes of extorting money from Monoflo and gaining a competitive advantage. As such, Monoflo argues, the threats constitute acts of unfair competition under the laws of the United States and Virginia. Damages of $150,000 are alleged.

## ANALYSIS

(1) *The Lanham Act Claim*

▪ Whether Section 43(a) of the Act reaches KKG's false statement concerning its status as Monoflo's exclusive European sales agent is a question of statutory construction. And it is settled that "[s]tatutory construction must begin with the language employed by Congress·and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dallas Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985). (construing the Lanham Act). Thus, the pertinent portions of Section 43(a) provide that

> Any person who shall affix, apply, or annex, or use *in connection with any goods or services* ... a false designation of origin, or any false description or representation, including words or other symbols *tending falsely to describe or represent the same*, and *shall cause such goods or services to enter into commerce* ... shall be liable to a civil action....

15 U.S.C. § 1125(a) (emphasis added). The plain meaning of this language, while broad, does not encompass the alleged KKG misrepresentation. That misrepresentation concerned KKG's status as Monoflo's sales agent; it was not a "false ... representation" made "in connection with any goods or services" which tended "falsely to represent" those goods or services. Put another way, Section 43(a) reaches only misrepresentations that tend falsely to represent some aspect of a product or service; it does not reach, as here, misrepresentations essentially unconnected to a product or service. In misrepresenting its status as Monoflo's exclusive European sales agent, KKG said nothing that would tend falsely to represent anything about the quality, nature, or characteristic of any product or service.

To be sure, misrepresentations concerning a party's status or commercial relationships may tend, in other contexts, to mislead or create confusion about a product or service. Not so here, however, as is well illustrated by considering a range of other misrepresentations KKG might have made to achieve the desired end of inducing Monoflo's distributor to sell KKG the boxes. Thus, to achieve this end, KKG might have

misrepresented that Monfolo owned all or part of KKG, that Monoflo and KKG were joint venturers in Europe or Asia, that Monoflo had recommended that KKG purchase the boxes from the distributor, or that Sahm was the brother-in-law of Monoflo's chief executive. Like the misrepresentation in issue, each of these is a false representation concerning the relationship between Monoflo and KKG; each is a false representation designed to induce the sale of Monoflo's plastic boxes to KKG; and each is essentially unconnected to any KKG product or service. For this latter reason, none falls within Section 43(a). To reach the opposite conclusion would sweep within the Act's ambit almost any misstatement made in the context of a commercial transaction, a result contradicted by the Act's plain meaning and sharply at odds with its application by the courts. In sum, Section 43(a), by its plain meaning, does not reach KKG's claim to be Monoflo's exclusive European sales agent because that statement does not falsely represent anything about a KKG product or service.

Consistent with this result and with the Act's plain meaning, most courts have held that a misrepresentation is actionable under Section 43(a) only if it concerns the defendant's own goods or services.[4] A few courts, chiefly within the First Circuit, have read the Act more narrowly to proscribe only "palming off" or similar claims.[5] Still another minority of courts have read the Act more liberally to include claims of deceptive comparative advertising.[6] But no court has extended Section 43(a) to reach, as here, misrepresentations unconnected with the defendant's product or service. Instead, as even Monoflo's cited authorities reflect, Section 43(a) reaches only a defendant's misrepresentations concerning its products or services.[7]

4. *See, e.g., Fur Information & Fashion Council v. E.F. Timme & Son,* 501 F.2d 1048, 1051 (2d Cir.) (Section 43(a) applies "only to misrepresentations relating to the inherent qualities of defendant's own goods"), *cert. denied,* 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974); *Bernard Food Indus. v. Dietene Co.,* 415 F.2d 1279, 1283 (7th Cir.1969) (scope of Lanham Act does not reach disparagement of plaintiff's product), *cert. denied,* 397 U.S. 912, 90 S.Ct. 911, 25 L.Ed.2d 92 (1970).

5. *See Samson Crane Co. v. Union Nat'l Sales,* 87 F.Supp. 218, 222 (D.Mass.1949), *aff'd,* 180 F.2d 896 (1st Cir.1950).

6. *See, e.g., Skil Corp. v. Rockwell Int'l Corp.,* 375 F.Supp. 777 (N.D.Ill.1974). In general, however, false statements about a competitor's product have not been held actionable. *See Oil Heat Inst. v. Northwest Natural Gas,* 708 F.Supp. 1118, 1122 (D.Or.1988). The amendments to the Act, effective this month, *see supra* note 1, change this and bring product defamation squarely within the ambit of the Act.

7. *See Steele v. Bulova Watch Co.,* 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952) (defendant misrepresented that his Mexican-made watches were made by Bulova); *M. Kramer Mfg. Co. v. Andrews,* 783 F.2d 421, 425 (4th Cir.1986) (by selling unauthorized copies of plaintiff's video poker game, defendant misrepresented that its product was the original); *L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,* 214 F.2d 649, 650 (3d Cir. 1954) (defendant misrepresented the quality of its cheaper dress by using a photograph of plaintiff's more expensive dress in its advertisement); *Allen v. Men's World Outlet, Inc.,* 679 F.Supp. 360, 368–69 (S.D.N.Y.1988) (plaintiff must show false representation that defendant's products are "[*plaintiff's* ] services and goods.") (emphasis in original); *Consumers Union of United States v. New Regina Corp.,* 664 F.Supp. 753, 766 (S.D.N.Y.1987) (defendants misrepresented that their vacuum cleaner had received Consumers Union's approval); *Upjohn Co. v. Riahom Corp.,* 641 F.Supp. 1209, 1222 (D.Del. 1986) (defendants' advertising misrepresented that their hair growth stimulant was related to plaintiff's patented medication); *Chicago Lawyer, Ltd. v. Forty–Sixth Ward Regular Democratic Org.,* 220 U.S.P.Q. 511, 513, 1982 WL 1283 (N.D.Ill.1982) (defendants' election pamphlet quoted excerpts of plaintiff's publication out of context to mislead voters that plaintiff supported defendants' analysis); *U.S. News & World Report, Inc. v. Campaigner Publications, Inc.,* 222 U.S.P.Q. 123, 124, 1982 WL 441 (D.D.C. 1982) (defendants' employees misidentified themselves as plaintiff's employees in order to obtain information for defendants' publication and thereby misrepresented the source of the story); *Follett v. Arbor House Publishing Co.,* 497 F.Supp. 304, 313 (S.D.N.Y.1980) (defendant's book misrepresented plaintiff as the principal author when he was merely the reviser); *In re Uranium Antitrust Litigation,* 473 F.Supp. 393, 409 (N.D.Ill.1979) (defendant's counterclaim stated a valid cause of action where plaintiff allegedly misrepresented its uranium delivery capabilities); *John Wright, Inc. v. Casper Corp.,* 419 F.Supp. 292, 326–27 (E.D.Pa.1976) (defendants' advertising misrepresented that its reproduction mechanical penny banks were certified as authentic by an independent guarantor), *aff'd in part, rev'd on other grounds sub nom. Donsco,*

Monoflo incorrectly cites *Consumers Union of United States v. New Regina Corp.*, 664 F.Supp. 753 (S.D.N.Y.1987); *Chicago Lawyer v. Forty–Sixth Ward Regular Democratic Organization*, 220 U.S.P.Q. 511 (N.D.Ill.1982); and *U.S. News & World Report v. Campaigner Publications*, 222 U.S.P.Q. 123 (D.D.C.1982), as supporting authority directly in point. These decisions are neither directly in point, nor supportive of Monoflo's position. Unlike the instant case, all three involve representations that tend falsely to represent some aspects of the defendant's service and product. In *Consumers Union*, defendants misrepresented that its vacuum cleaner products were endorsed by plaintiff when it referred to plaintiff's publication in television advertising for the vacuum cleaners. In *Chicago Lawyer*, the defendant political organization distributed material reflecting its endorsement of candidates in a judicial election. By including excerpts from plaintiff's publication in a misleading fashion, defendants effectively made a false representation that its product, *i.e.*, the material setting forth its endorsements, was concurred in by plaintiff's publication. Similarly, in *U.S. News & World Report*, defendants' publications published stories obtained when defendants' reporters misrepresented themselves as reporters from U.S. News and World Report. This deception caused confusion concerning the source of defendants' stories, *i.e.*, their products. None of these decisions suggests that Section 43(a) reaches, as here, misrepresentations unconnected with defendant's product.

While there is no decision directly in point, *Computer Associates Internation-al, Inc. v. Computer Automation, Inc.*, 678 F.Supp. 424 (S.D.N.Y.1987), is sufficiently close that its result and rationale are instructive. There, plaintiff's complaint alleged that defendant had violated Section 43(a) by sending three letters allegedly misrepresenting plaintiff's rights in a disputed trademark. The court dismissed this claim, noting that even assuming the letters were "false designation(s) or representation(s)" under Section 43(a), the letters were not "made in connection with goods or services that entered into commerce." 678 F.Supp. at 429. The same result obtains here for the same reason. KKG's misrepresentations concerning its relationship with Monoflo, like the misrepresentation about trademark rights in *Computer Associates International, Inc.*, are not actionable under Section 43(a) because they are not made "in connection with any goods or services."

■ Monoflo's attempt to state a Lanham Act claim is fatally deficient for yet another reason. By its terms, Section 43(a) requires more than a misrepresentation in connection with goods or services. It requires that defendant "cause such goods or services to enter into commerce." 15 U.S.C. § 1125(a). Yet nowhere in the Amended Complaint is there any allegation that KKG "cause[d] ... goods or services to enter into commerce," as required by the Act. The absence of such an allegation is not inadvertent; it is required by the facts, and indeed follows from the absence of any nexus between KKG's misrepresentation about its sales agency status and any KKG product or service.[8] The result is a failure

*Inc. v. Casper Co.*, 587 F.2d 602 (3d Cir.1978); *Petersen v. Fee Int'l, Ltd.*, 381 F.Supp. 1071, 1080 (W.D.Okla.1974) (defendants misrepresented that their wrenches were manufactured under plaintiff's patent, which defendants neither owned nor had permission to use); *Geisel v. Poynter Prods.*, 283 F.Supp. 261, 265–66 (S.D.N.Y.1968) (defendants misrepresented that their dolls were either designed, manufactured, or authorized by Dr. Suess); *see also Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145 (4th Cir.1984) (defendants misrepresented their sports shirts as plaintiffs' by using similar embroidered rider emblem); *R.J. Reynolds Tobacco Co. v. Virginia Int'l Export, Inc.*, 220 U.S.P.Q. 712 (E.D.Va.1982) (defendants misrepresented their cigarettes as plaintiffs' by using similar packaging and name).

8. Missing also from the Amended Complaint, for the same reason, are any allegations that KKG's misrepresentation was likely to confuse purchasers of KKG's goods. *R.J. Reynolds Tobacco Co. v. Virginia Int'l Export, Inc.*, 220 U.S.P.Q. 712, 715 (E.D.Va.1982) ("test ... for trademark and trade dress infringement and unfair competition is likelihood of confusion among the consuming public"); *see also Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir.1987).

to state a Section 43(a) cause of action for "[t]he statute requires that the defendant . . . cause the precise goods in question to enter into commerce. This element of the action is 'jurisdictional in nature' and 'not to be taken lightly.' " *Obolensky v. G.P. Putnam's Sons*, 628 F.Supp. 1552, 1556 (S.D.N.Y.), *aff'd*, 795 F.2d 1005 (2d Cir. 1986) (citations omitted); *see also International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 n. 8 (9th Cir.1980), *cert. denied*, 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981); *Vanity Fair Mills, Inc. v. T. Eaton Co., Ltd.*, 234 F.2d 633, 642–44 (2d Cir.), *cert. denied*, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956). In summary, the Lanham Act claim fails because KKG's misrepresentation was not made in connection with any goods or services and because Monoflo did not and cannot allege that KKG caused any such goods or services to enter into commerce.

In oral argument, Monoflo's counsel suggested that the 1989 amendments to the Act show that Section 43(a) covers misrepresentations even when not made about KKG's goods or services. The argument is meritless. The 1989 amendments do not apply to this case. The misrepresentation complained of here occurred prior to November 16, 1989, the effective date of the amendments. This case is governed by the prior version of the Act.[9] Accordingly, this Court need not and does not decide whether the 1989 amendments reach the misrepresentation alleged in this case.[10]

---

**9.** *See supra* note 1.

**10.** In essence, the 1989 amendments expand the Act to include commercial defamation claims. As noted, most courts giving effect to the plain meaning of Section 43(a) have in the past limited the applicability of the Act to misrepresentations about a defendant's product or service. *See supra* notes 4, 7 and accompanying text. False representations about the plaintiff's product or service have generally not been considered actionable under the Act. The 1989 amendments change this; they extend the reach of the Act to any false and misleading representations about the "nature, characteristics, qualities, or geographic origin of [any person's] goods, services or commercial activities." The Trademark Revision Act of 1988, Pub.L. No. 100–667, § 132, 102 Stat. 3935, 3946 (codified at 15 U.S.C. § 1125) (effective November 16, 1989).

## (2) *The Unfair Competition Claim*

Monoflo's unfair competition claims under federal and Virginia law rest on two acts by KKG: (1) misrepresentations concerning KKG's status as Monoflo's exclusive European sales agent, and (2) threats of "unspecified and groundless criminal action" if Monoflo refused to settle its contractual disputes with KKG. The claims do not survive close scrutiny. To begin with, there is considerable doubt over whether a federal common law of unfair competition survived *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).[11] Some specialized areas of federal common law plainly survived and have continued viability today. *See, e.g., Firestone Tire & Rubber Co. v. Bruch*, — U.S. —, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (applying federal common law of trusts to determine appropriate standard of review under ERISA). But many courts appear to conclude that the federal common law of unfair competition is not one of these specialized areas,[12] perhaps because Congress enacted the Lanham Act in 1946. *See Caesars World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 272 (3d. Cir.1975) (quoting Lanham Act legislative history for premise that there is no longer a federal common law of trademark infringement). Yet other courts recognize this debate, but avoid deciding the issue on the ground that state and federal common law torts of unfair competition are congruent. *See, e.g., Capital Films Corp. v. Charles Fries Produc-*

---

**11.** *See, e.g., Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 372 (1st Cir.1980), *modified on other grounds, Miller Brewing Co. v. Falstaff Brewing Corp.*, 655 F.2d 5, 7–8 n. 2 (1st Cir. 1981).

**12.** *See, e.g., 20th Century Wear, Inc. v. Sanmark–Stardust Inc.*, 747 F.2d 81, 92 n. 15 (2d Cir.1984) (pre-Lanham Act decisions based on federal common law of unfair competition persuasive but not controlling), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1755, 84 L.Ed.2d 818 (1985); *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 794 (California unfair competition misappropriation laws stem from pre-Erie doctrine of federal common law).

*tions, Inc.,* 628 F.2d 387, 394 n. 4 (5th Cir.1980).

Against this background, the Court finds persuasive the view that there is no federal common law of unfair competition applicable here separate or apart from the Lanham Act and the judicial decisions construing that Act. As noted, after *Erie* federal common law outside of a specific federal statutory scheme survives only in certain specialized areas [13] such as international relations,[14] admiralty,[15] enforcement of constitutional rights,[16] interstate disputes,[17] or federal proprietary interests.[18] Special reasons support the development and use of federal common law in these areas. They include the supremacy of the federal government over international relations, the peaceful solution of controversies between states, and the need for a uniform national standard. No such special reasons exist in the case at bar. On the contrary, unfair competition in its manifold forms is adequately addressed at the federal level by a number of statutes, including the Act and the antitrust, copyright, and patent laws, as well as the judicial decisions construing them. And the Court perceives no need to establish uniform national standards of unfair competition beyond those contained in these statutes and their associ-ated decisional law. In sum then, because neither KKG's misrepresentations as to its status as Monoflo's sales representative nor its threats of groundless criminal prosecution fit within the Act or the cases construing it, Count I of the Monoflo's Amended Complaint fails to state a valid federal claim.

■ Nor does Virginia's unfair competition law afford Monoflo a remedy on the facts presented here. Virginia continues to adhere to a narrow, sharply defined common law definition of unfair competition, *i.e.* "deception, by means of which goods of one dealer are palmed off as those of another." *Benjamin T. Crump Co. v. J.L. Lindsay, Inc.,* 130 Va. 144, 160, 107 S.E. 679, 684 (1921) (cited with approval in *Rosso & Mastracco, Inc. v. Giant Food Shopping Center,* 200 Va. 159, 104 S.E.2d 776, 781 (1958)). Given this, it is readily apparent that KKG's misrepresentations concerning its status as Monoflo's European sales agent are not actionable under Virginia's common law. Monoflo fails to cite, nor has the Court found, any Virginia statute or common law authority to the contrary. None of Virginia's several statutes proscribing deceptive trade practices applies to the conduct in issue.[19] And, signifi-

---

**13.** Worth noting is that the Rule of Decisions Act, 28 U.S.C. § 1652, which was the subject of interpretation in *Erie,* arguably bars the creation of federal common law "except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide." It seems clear that the creation of federal common law designed to fill gaps in federal statutory schemes is implicitly authorized by an Act of Congress. But where the creation of federal common law is unrelated to, or at best remote from, a federal statutory scheme, there is some question whether the development of federal common law in these circumstances is appropriate.

**14.** *See e.g., Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964).

**15.** *See, e.g., Garrett v. Moore–McCormack Co.,* 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942).

**16.** *See, e.g., Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**17.** *See, e.g., Colorado v. New Mexico,* 459 U.S. 176, 103 S.Ct. 539, 74 L.Ed.2d 348 (1982), 467 U.S. 310, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984). Additionally, the Supreme Court at one time recognized a federal common law nuisance cause of action for interstate pollution. *Illinois v. City of Milwaukee,* 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). After passage of the Federal Water Pollution Act of 1972, however, the Court concluded that the statute displaced the federal common law cause of action. *City of Milwaukee v. Illinois,* 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981).

**18.** *See e.g., Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

**19.** *See,* Va.Code Ann. §§ 18.2–216, 18.2–499 (Repl.Vol.1988) and § 59.1–200 (Repl.Vol.1987) (proscribing, respectively, false advertising, conspiracy to injure another's business, and consumer fraud).

cantly, Virginia has never adopted the Uniform Deceptive Trade Practices Act or an analogous statute which might make actionable false claims of association with another.[20]

■ Similarly, KKG's threats to Monoflo of "unspecified and groundless criminal action" do not establish a Virginia claim of unfair competition. They, too, do not fit under any Virginia statute or judicial decision. Nor is this surprising. Even in jurisdictions where threats of groundless suits may constitute a common law claim for unfair competition, Monoflo's own authorities demonstrate that the key element of this cause of action is that the threat be directed not at the complaining party, but at its customers or other third parties. *See Chromium Indus. v. Mirror Polishing & Plating Co.*, 448 F.Supp. 544, 558–59 (N.D. Ill.1978) (defendant threatened plaintiff's customers with patent infringement suits for plaintiff's infringement); *Dehydro, Inc. v. Tretolite Co.*, 53 F.2d 273, 274 (N.D. Okla.1931) (same); *Sun–Maid Raisin Growers v. Avis*, 25 F.2d 303, 304 (N.D.Ill. 1928) (same); *American Mercury, Inc. v. Chase*, 13 F.2d 224, 225 (D.Mass.1926) (defendants threatened plaintiff publisher's customers, magazine distributors, with criminal prosecution for selling a particular issue).[21] This key element underscores that the purpose of this cause of action is to prevent injury to competition. Competition is injured, for example, where a firm threatens a competitor's customers with suit for patent or trademark infringement or trade secret misappropriation for the purpose of inducing these customers to deal with the threatening firm rather than its competitor. But here the threats were directed only at Monoflo and not at its customers or others, and they were unconnected to any product or service. There was, therefore, no injury to competition, especially as Monoflo confirms that it perceived these implausible threats as groundless. Therefore, Monoflo fails to state an unfair competition claim even under common law schemes broader than Virginia's. Were this Court to hold otherwise, the effect would be to sweep within Virginia's common law of unfair competition every threat of civil or criminal action regardless of context. Such expansion of Virginia's unfair competition law is wholly unwarranted. Even were this not the case, this Court is not the proper body to effect such an expansion. *Gravins v. International Playtex, Inc.*, 586 F.Supp. 251, 252 (E.D. Va.1984).

Accordingly, Count I of the Amended Complaint is dismissed with prejudice. Count II remains for disposition. An appropriate Order will issue.

---

**20.** The Uniform Deceptive Trade Practices Act § 2(a)(3) provides:

    (a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:

    . . . . .

    (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by another.

7A U.L.A. 265, 278 (1966). Note, however, that Subsection 2(a)(3), even had it been adopted in Virginia, might well not reach KKG's misrepresentations for the applicable official comment apparently limits the scope of this subsection to confusion caused by misleading trade names. *Id.*

**21.** And generally these threats must be made without the pendency of a suit against the business, for the activity sought to be deterred is the assertion of bald threats against third parties without any attempt to judicially resolve the threshold question of the business's liability. *See Chromium Indus.*, 448 F.Supp. at 558–59; *Sun–Maid Raisin Growers*, 25 F.2d at 304; *American Mercury, Inc.*, 13 F.2d at 225.