**Michael BOWERS, Plaintiff,**

v.

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, Act, Inc., NCAA Initial–Eligibility Clearinghouse, Temple University of the Commonwealth System of Higher Education, University of Iowa, American International College, Defendants,**

**Temple University of the Commonwealth System of Higher Education, Defendant and Third–Party Plaintiff,**

v.

**Delaware State University, University of Memphis, University of Massachusetts Amherst, Third–Party Defendants.**

**CIVIL ACTION NO. 97–2600.**

United States District Court, D. New Jersey.

March 6, 2002.

Barbara E. Ransom, Max Lapertosa, Public Interest Law Center of Philadelphia, Philadelphia, PA, Richard L. Bazelon, Bazelon, Less & Feldman, P.C., Marlton, NJ, for Plaintiff, Michael Bowers.

Charles J. Vinicombe, J. Freedley Hunsicker, Jr., John Schultz, Julianne Peck, Amy E. Pizzutillo, Drinker, Biddle & Shanley LLP, Princeton, NJ, for Defendant, National Collegiate Athletic Association.

Mark Schantz, Andrew Ives, Office of the General Counsel, University of Iowa, Iowa City, IA, Thomas J. Miller, Attorney General, Gordon E. Allen, Deputy Attorney General, Office of the Iowa Attorney General, Des Moines, IA, William O. Perkins, Jr., Jack Jay Wind, Margulies, Wind, Herrington & Knopf, P.C., Jersey City, NJ, for Defendant, University of Iowa.

John B. Langel, Abigail L. Flitter, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, for Defendant and Third–Party Plaintiff, Temple University of the Commonwealth System of Higher Education.

David Samson, Attorney General of New Jersey, Jeffrey C. Burstein, Senior Deputy Attorney General, The State of New Jersey, Newark, NJ, for Intervenor, The State of New Jersey.

Linda B. Celauro, John James Peirano, Jr., Carpenter, Bennett & Morrissey, Newark, NJ, for Third–Party Defendant, University of Massachusetts Amherst.

Peter L. Frattarelli, Archer & Greiner, A Professional Corporation, Haddonfield, NJ, for Third–Party Defendant, University of Memphis.

Michael K. Willison, Dickie, McCamey & Chilcote, Lawrenceville, NJ, for Third–Party Defendant, Delaware State University.

## OPINION

ORLOFSKY, District Judge.

## I. INTRODUCTION AND PROCEDURAL HISTORY

This Opinion, the ninth in the ongoing saga of Michael Bowers, resolves certain unanswered questions left open by my previous opinion, in which I largely denied the Motions to Dismiss of the Third–Party Defendants. *See Bowers v. Nat'l Collegiate Athletic Assoc.*, 171 F.Supp.2d 389 (D.N.J. 2001) ("*Bowers VIII*").[1] More specifically, I determined that the Defendant and Third–Party Plaintiff, Temple University of the Commonwealth System of Higher Education ("Temple"), had a right to contribution under Title II of the Americans with Disabilities Act ("Title II") and Section 504 of the Rehabilitation Act of 1973 ("Rehab.Act") against each of the Third–Party Defendants. I declined, however, to decide whether or not a similar right of contribution existed under the New Jersey Law Against Discrimination ("NJLAD").

My hesitation to decide the NJLAD question was based on the fact that the Third–Party Defendant, University of Memphis ("Memphis"), as an "arm of the state" of Tennessee, is immune from suit in federal court under a state cause of action, and the remaining Third–Party Defendants, University of Massachusetts Amherst ("U.Mass.") and Delaware State University ("DSU") have at least colorable claims to the same immunity. This Court, arguably, lacks jurisdiction to hear Temple's supplemental state claims against immune entities. As I explained in my previous opinion, sovereign immunity does not partake of all of the traditional features of subject matter jurisdiction. *See Bowers VIII*, 171 F.Supp.2d at 398–99; *see also Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (noting that court need not raise sovereign immunity defense on its own motion). There is language in the *Pennhurst* opinion, however, to suggest that at least the bar against supplemental state law claims *is* jurisdictional, perhaps because the policy interests of sovereign immunity counsel a narrow view of pendent jurisdiction. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 118, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (noting that "doctrine of pendent jurisdiction ... has a different scope when applied to suits against the State"). On the other hand, that language may well be dicta, and the Third Circuit has rejected the view that the Eleventh Amendment is a limit on federal jurisdiction. *Compare id.* at 119–20, 104 S.Ct. 900, *with Christy v. Pennsylvania Turnpike Comm'n*, 54 F.3d 1140, 1144 (3d Cir.1995), and *Schacht*, 524 U.S. at 391, 118 S.Ct. 2047 (observing that Supreme Court has not determined whether Eleventh Amendment immunity "is a matter of subject-matter jurisdiction"). Still, I deemed it wiser to err on the side of caution.[2]

---

1. Readers interested in a more detailed factual and procedural history of this case are recommended to *Bowers VIII*, 171 F.Supp.2d at 392–94.

2. Just last week, the Supreme Court decided that " § 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants." *Raygor v. Regents of Univ. of Minn.*, —— U.S. ——, ——, 122 S.Ct. 999, 1004, 1005, —— L.Ed.2d —— (2002). That

I therefore requested supplemental briefing on the question of whether U. Mass. and DSU were entitled to claim the sovereign immunity of their respective states. DSU elected not to file a supplemental brief. I now must determine whether or not U. Mass. is an "arm of the state" of Massachusetts, and, if so, whether or not the NJLAD even permits a claim for contribution in these circumstances.

■ Additionally, as part of my determination that Temple may bring a claim for contribution against the Third–Party Defendants under Title II and the Rehab. Act, I ruled that Congress had validly abrogated the sovereign immunity of the States in enacting Title II, at least to the extent that Title II does not permit damages for conduct other than intentional discrimination. *See Bowers VIII,* 171 F.Supp.2d at 402–08. I also concluded that Memphis waived its immunity from suit in accepting funds under the terms of the Rehab. Act. *Id.* at 408–09. Memphis has appealed those determinations to the Third Circuit.[3] Memphis has also sought a stay in this Court of any further proceedings pending the outcome of the appeals. Approximately one month after Memphis

filed its notice of appeal, on December 21, 2001, the University of Iowa ("Iowa"), one of the original Defendants, filed an appeal challenging my July 3, 2001 Opinion and Order denying Iowa status as an arm of the state entitled to sovereign immunity.[4]

■ Moreover, U. Mass. has applied to me to certify an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), so that it may in turn petition the Third Circuit for consideration of its appeal of my determination that a right of contribution exists, as a matter of statutory interpretation, under Title II and the Rehab. Act. That question, as I explained in *Bowers VIII,* is logically antecedent to the sovereign immunity issue as I framed it. I asked, first, whether there exists a right of contribution in general under the statutory framework of Title II and the Rehab. Act. *See Bowers VIII,* 171 F.Supp.2d at 395–97. Since I concluded that contribution is available under both statutes, I went on to consider whether or not the Third Party Defendants could have been liable to Bowers in the first instance, as that is one of the common-law elements of a right to contribution.[5] *See id.* at 397–98. U. Mass.'s proposed appeal, as I understand

---

would appear to confirm my view that sovereign immunity is jurisdictional at least when it would apply to cases over which a federal court has only supplemental jurisdiction.

**3.** A denial of Eleventh Amendment immunity is immediately appealable. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy,* 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). Memphis filed its Notice of Appeal on November 21, 2001. DSU also filed a Notice of Appeal, on November 29, 2001. That appeal was voluntarily dismissed on February 21, 2002. U. Mass. did not join Memphis' Rule 12(b)(1) Motion, and raised an Eleventh Amendment immunity defense for the first time in its supplemental brief filed in response to my request. *See* U. Mass.'s Supp. Br. at 30. In the interests of fairness and judicial economy, I will treat U. Mass.'s Supplemental Brief as a Motion to Dismiss, and

decide the Eleventh Amendment question *infra.*

**4.** In yet another of the many procedural mysteries surrounding this case, the Court of Appeals has so far declined to dismiss Iowa's appeal, notwithstanding the fact that it was not timely under either Fed. R.App. P. 4(a)(1) or 4(a)(3).

**5.** I note that, in contrast, Memphis' Notice of Appeal appears to assert that I have found that Memphis would not be immune from suit *by Temple.* I never considered that question, in large part because Memphis never contested Temple's assertion that Temple is likely an arm of the State of Pennsylvania. *See* Temple's R. 12(b)(1) Opp. Br. at 10 n. 5. States are not immune from suit by other states. *See infra* Part II.C.

it, challenges the first, statutory, determination, but not the second, fact-specific one. U. Mass. also seeks a stay pending any appeal of the right to contribution/statutory interpretation issue.

Finally, Bowers has moved to sever the Third–Party claims in their entirety, so that his case, which is ready to proceed to trial, need not wait for the pending appeals by the Third–Party Defendants. That motion is currently pending before Magistrate Judge Rosen.

■ This Court has jurisdiction over Temple's claims pursuant to 28 U.S.C. § 1367(a).[6]

## II. DISCUSSION

### A. U. Mass.'s Motions to Dismiss

■ In its Supplemental Brief, U. Mass. seeks to dismiss Temple's claims for contribution under both federal and state statutes on the grounds that it possesses sovereign immunity from suit. I requested supplemental briefing only on the question of U. Mass.'s immunity from suit under the NJLAD. See Bowers VIII, 171 F.Supp.2d at 409. However, U. Mass. relies for its federal immunity argument almost entirely on Memphis' Rule 12(b)(1) Brief. Temple, of course, has already had an opportunity to respond to those arguments. Since I therefore see little danger of prejudice to Temple, I will treat U. Mass.'s Brief as a Motion to Dismiss Temple's claims under Title II and the Rehab. Act, as well as those under the NJLAD.

### 1. Whether U. Mass. is an "Arm of the State" of Massachusetts

■ Whether or not U. Mass. is an entity entitled to sovereign immunity turns on whether, when U. Mass. is a defendant in a law suit, the State of Massachusetts is the " 'real, substantial, party in interest.' " Univ. of Cal. v. Doe, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997) (quoting Ford Motor Co. v. Dep't of Treas., 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945)). As the parties are now painfully aware, the Third Circuit applies a massive multi-factor balancing test to determine when a state entity is an "arm of the state," so that in a claim against the entity the state is the real party in interest. See Carter v. City of Philadelphia, 181 F.3d 339, 347–48 (3d Cir.1999); Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655 (3d Cir. 1989). I have previously determined, however, that exposure of the state treasury to judgments against the entity is sufficient to demonstrate that the entity is an arm of the state. See Bowers VIII, 171 F.Supp.2d at 402 (citing Hess v. Port Auth. Trans–Hudson Corp., 513 U.S. 30, 50–51, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994); id. at 59, 115 S.Ct. 394 (O'Connor, J., dissenting)). In addition, I concluded that where a state denominates all of a university's funds as "state" funds, respect for the state's power to order its own governmental processes requires me to abide by that label, even if largely contrary to its functional accuracy. Id. at 401–02, 115 S.Ct. 394 (citing Doe, 519 U.S. at 429–31, 117 S.Ct. 900; Gregory v. Ashcroft, 501 U.S.

**6.** Generally, the filing of a notice of appeal divests the District Court of jurisdiction over the case, or at least "those aspects of the case involved in the appeal." See Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam). I still have jurisdiction over the Motions by U. Mass. and DSU because the availability of contribution under the NJLAD is not an aspect of the case involved in Memphis' appeal. Furthermore, although the subject matter of U. Mass.'s Motion to Dismiss overlaps somewhat with Memphis's appeal, judicial economy concerns suggest that I should rule now on U. Mass.'s immunity claims in the first instance. See Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 97 (3d Cir.1988).

452, 460–63, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991)).

Massachusetts, like Tennessee, assigns all moneys received by its state universities to the state treasury. *See* Mass. Const. Amends. art. LXIII § 1; *Town of Manchester v. Dep't of Envtl. Quality Eng'g*, 381 Mass. 208, 409 N.E.2d 176, 182–83 (1980). Certain funds that are received for limited purposes, such as federal grants, may be held in trusts and expended only for the limited purpose for which they are received. *Town of Manchester*, 409 N.E.2d at 183. None of U. Mass.'s limited purpose funds may be used to pay judgments against the university. *See Daniel v. Am. Bd. of Emergency Med.*, 988 F.Supp. 127, 180 (W.D.N.Y.1997); Lenhardt Aff. ¶¶ 6–13. Thus, any judgment would be paid by what Massachusetts law describes as state funds. That is a sufficient basis for me to conclude that U. Mass. is an arm of the state of Massachusetts. *See Bowers VIII*, 171 F.Supp.2d at 401–02. Accordingly, I must dismiss Temple's claims for contribution under the NJLAD against U. Mass. *See id.* at 409; *see also Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 122 S.Ct. 999, 1004, 1005, 152 L.Ed.2d 27 (2002).

### 2. U. Mass.'s Motion to Dismiss Temple's Claims for Contribution Under Title II and the Rehab. Act.

U. Mass. relies in its brief almost entirely on the arguments previously advanced by Memphis. *See* U. Mass.'s Supp. Br. at 30. Naturally, I reject those arguments, for the reasons I have explained previously. Two matters, however, deserve further consideration.

First, U. Mass. argues that, inasmuch as the right to contribution under Title II and the Rehab. Act is created by federal common law, rather than by Congress, it fails the "clear statement rule." *See, e.g., Quern v. Jordan*, 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (holding that state immunity was not abrogated where Congress had not "explicitly and by clear language indicate[d] … an intent to sweep away the immunity of the States"). This argument misunderstands the basis for my decision in *Bowers VIII*. Neither U. Mass. nor Memphis has challenged Temple's status as an arm of the state of Pennsylvania. States are not immune from suit by other states. *See, e.g., Colorado v. New Mexico*, 459 U.S. 176, 182 n. 9, 103 S.Ct. 539, 74 L.Ed.2d 348 (1982) (holding that defendant state could not assert sovereign immunity where suit was brought to vindicate interests of plaintiff State, rather than interest of private state residents). Nonetheless, as I explained, there is no right to contribution where the third-party defendant would be immune from suit by the principal plaintiff. *See Bowers VIII*, 171 F.Supp.2d at 397 (citing W. Page Keeton et al., *Prosser & Keeton on Torts* § 50, at 339–40 (5th ed.1984)); *see also Tomkovich v. Pub. Serv. Coordinated Transp.*, 61 N.J.Super. 270, 274–76, 160 A.2d 507 (App.Div.1960) (holding that there was no right to contribution when third-party defendant had spousal immunity from suit by principal plaintiff). Therefore, the only Eleventh Amendment issue in this case is whether U. Mass. is immune from suit *by Bowers*. I have already answered that question in the negative.[7]

Secondly, I note that my determination that Memphis has waived its im-

---

7. Even if I were to consider the question of U. Mass.'s immunity from suit by Temple, Congress' express abrogation applies to "an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202 (2000). I see no textual basis for excluding third-party "action[s]" from coverage.

munity in accepting funds under the Rehab. Act does not necessarily apply equally to U. Mass. *See Bowers VIII,* 171 F.Supp.2d at 408–09. U. Mass. has not offered evidence from which I could conclude that it was coerced into waiving its immunity in accepting funds under the Rehab. Act. Sovereign immunity is an affirmative defense, and the burden is upon the party asserting immunity to come forward with facts sufficient to support it. *See Carter,* 181 F.3d at 347. Therefore, I conclude that U. Mass. has waived any coercion argument it might have.

## B. The NJLAD Claims

█ DSU has renewed its Motion to Dismiss Temple's claim for contribution under the NJLAD on the ground that the NJLAD does not provide for a right to contribution, either in general or in these particular circumstances. Upon close scrutiny I have discovered that an accurate resolution of DSU's arguments would require me to determine not one, but two distinct questions of first impression under New Jersey Law. Since, for reasons I will explain, there are no strong reasons of economy, judicial or otherwise, to keep the NJLAD and other contribution claims together in one litigation, I will exercise my discretion under 28 U.S.C. § 1367(c)(1) to dismiss without prejudice the supplemental NJLAD claim against DSU.

█ A federal court may dismiss a supplemental state law claim if, among other reasons, "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1) (2000); *see Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 487 (3d Cir.1998). In general, though, considerations of "judicial economy, convenience, and fairness to the parties" require that a court with original federal jurisdiction over some claims retain supplemental jurisdiction over the others, in the absence of a "substantial countervailing consideration." *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995).

█ New Jersey has not decided whether or not defendants sued under the NJLAD may bring claims for contribution. Contribution in New Jersey exists by statute. *See* Joint Tortfeasors Contribution Law, N.J. Stat. Ann. §§ 2A:53A–1 to –5 (West 2000) ("JTCL"); Comparative Negligence Act, N.J. Stat. Ann. §§ 2A:15–5.1 to –5.4 (West 2000) ("CNA"). The JTCL does cover intentional tortfeasors, including actions for breach of contract, *see Dunn v. Praiss,* 139 N.J. 564, 575, 656 A.2d 413 (1995), but it is unclear whether a "tortfeasor" can include a wrongdoer under the NJLAD. The New Jersey Supreme Court has noted, in passing, the existence of claims for indemnification and contribution under the NJLAD, without offering any judgment about their merits. *See Payton v. N.J. Turnpike Auth.,* 148 N.J. 524, 543 n. 1, 691 A.2d 321 (1997). Although federal law is often instructive in NJLAD matters, *see, e.g., id.* at 538, 691 A.2d 321, it is of little help here. The reason there is no claim for contribution under Title VII is not because of policy but because of Article I constitutional limits on the power of federal courts to imply a right to contribution. *See infra* Part II.C. The question here, though, is the proper construction of an express statutory grant of a third-party remedy.

█ Assuming, however, that I were to find that there is a general right to contribution under the NJLAD, I would be faced with a subsidiary problem in determining how to apply statutory principles of contributory negligence to the common-law doctrine of joint and several liability. The CNA "modifie[d] joint and several liability" to require a jury to apportion the

percentage of fault for a particular harm among all of the proximate causes for that harm. N.J. Stat. Ann. § 2A:15–5.2 & .cmte. statement. An individual defendant is liable for the entire judgment only if he or she is adjudged 60% or more liable. *Id.* § 5.3. A defendant who, as a result, is compelled to pay more than the apportioned share of liability may then seek contribution from the other parties at fault. *Id.* § 5.3(e). The total of all percentages must be 100%. *Id.* § 5.2(a)(2). Where apportionment is not possible, the percentage contribution must be divided equally among all defendants. *See Campione v. Soden,* 150 N.J. 163, 184, 695 A.2d 1364 (1997).

At common law, however, co-conspirators or other defendants who acted in concert to commit the same harm were each jointly and severally—that is, 100%—liable to the victim.[8] *See* Keeton et al., *supra,* § 86. Both Judge Pisano and I have found that the JTCL preserved joint and several liability in its traditional common law sense among parties who act together in committing the wrong. *See Lentz v. Mason,* 961 F.Supp. 709, 719 (1995) (Orlofsky, J.); *Erkins v. Case Power & Equip. Co.,* 164 F.R.D. 31, 33 (D.N.J.1995) (Pisano, J.); *see also* Restatement (Third) of Torts: Apportionment of Liability § 15 (2000) (requiring joint and several liability for defendants who act in concert). Neither one of us, however, appears to have considered whether the New Jersey legislature intended to supersede the common law and require apportionment even among co-conspirators. That is a question that would be better answered by the courts of New Jersey in the first instance.

Considerations of judicial economy do not weigh strongly in the other direction. Obviously, duplicative litigation is wasteful. I see three possible outcomes in state court, however, none of them involving much burden on the parties. First, the state court could find that there is no right of contribution under the NJLAD, a question that would presumably be resolved on a motion to dismiss. Second, if the New Jersey court finds that the liability of the Third–Party Defendants is the same as under federal law, Temple will be bound by the jury's determination in this Court and no further proceedings in state court will be necessary. Lastly, the state court might find that the CNA has redefined "joint and several liability" in all circumstances. If so, Temple will only have a right to contribution if it is held 60% or more liable for Bowers's loss, *see* N.J. Stat. Ann. § 2A:15–5.3, an outcome that seems so remote that the state court's interpretation of the CNA should be enough to terminate the litigation. To the extent that there is some unfairness to the parties in being obliged to seek relief in another forum, that harm may well be outweighed by the fairness interest of the opposing parties in reaching an outcome most consistent with New Jersey law.

On balance, therefore, I conclude that the interests of comity and accuracy are clearly more significant than any economy concerns. Accordingly, I will dismiss Temple's claim for contribution under the NJLAD against DSU, without prejudice to Temple's right to seek contribution in state court.[9]

---

8. The acting in concert issue is relevant because Temple might argue, plausibly, that the relationship between the NCAA and the Defendants and Third–Party Defendants is a classic hub-and-spokes conspiracy.

9. Although DSU may be a sovereign entity, 28 U.S.C. § 1367(d) will still toll the New Jersey statute of limitations for Temple's claim under the NJLAD. *Raygor* limited the effect of the tolling provision only where it would affect "the time period in which a state sovereign is

## C. Memphis' Motion for a Stay Pending Appeal

█ Memphis has sought a stay of any further proceedings in the third-party action pending resolution of its appeal from my Order denying it immunity. As Memphis's appeal is not facially defective, and plainly not frivolous, I am obliged to grant its request. *See Rouse v. Plantier*, 997 F.Supp. 575, 582–83 (D.N.J.1998). To be clear, however, if Temple's Third–Party claims should be severed from Bowers's claims, my stay will apply only to Temple's claims. An appeal divests this Court of jurisdiction only over "those aspects of the case involved in the appeal." *Venen v. Sweet*, 758 F.2d 117, 120 (3d Cir.1985) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam)). Counsel for the Third Party Defendants have suggested in correspondence that they might be prejudiced by a trial of Bowers's claims against Temple while Temple's claims against them are stayed. In effect, then, to allow Bowers's claims to proceed during Memphis's appeal might oblige it to choose between the benefits of its immunity and its ability to preserve its longer-term interests. Since at this time I am not aware of any reason why the Third–Party Defendants would be precluded from relitigating their own culpability, however, I fail to see the source of the prejudice.

## D. U. Mass.'s § 1292(b) Motion.

█ U. Mass. and DSU seek my permission to petition the Third Circuit to hear their interlocutory appeal of my determination that there exists a general right to contribution under Title II and the Rehab. Act.[10] *See* 28 U.S.C. § 1292(b) (2000).[11] Whether or not a right to contribution exists is a "controlling" question for the Third–Party Defendants, because in its absence they can be dismissed from the case. *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir.1974) (holding that a "controlling question of law" includes, at a minimum, an order which if erroneous would constitute reversible error); *cf. Northwest Airlines, Inc. v. Transp. Workers Union*, 451 U.S. 77, 85 n. 12, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (noting that interlocutory appeal from district court decision finding a right to contribution was "appropriate"). An appeal at this stage would also bring us closer to the end of this litigation. The Third Party claims must already wait for resolution of Memphis' appeal as of right. It seems wiser to resolve all of the significant appellate issues now, rather than wait for another appeal after trial.

█ Whether there is "substantial ground for difference of opinion" with my determination is a more difficult question. U. Mass. raises two main possible flaws in my decision, of which I think the first to be

---

amenable to suit in *its own* courts." 534 U.S. 533, 122 S.Ct. 999, 1007, 1007, 152 L.Ed.2d 27 (emphasis added).

10. DSU joined U. Mass.'s Motion and Supporting Brief, but filed no papers of its own.

11. The statute provides, in relevant part, that: When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.... That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

For the relevant portion of my earlier Opinion, *see Bowers VIII*, 171 F.Supp.2d at 395–97.

meritless and the second somewhat more plausible. U. Mass.'s initial claim is that I improperly failed to consider whether or not Temple was a member of the class for whose especial benefit Title II was enacted. *See* U. Mass.'s § 1292 Br. at 9–11 (citing *Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 1520–21, 149 L.Ed.2d 517 (2001); *Northwest*, 451 U.S. at 92, 101 S.Ct. 1571). That argument simply confuses the careful parsing of congressional intention needed to preserve Congress' exclusive Article I control over federal jurisdiction, *see Northwest*, 451 U.S. at 95, 101 S.Ct. 1571 ("[F]ederal courts, unlike their state counterparts, are courts of limited jurisdiction that have not been vested with open-ended lawmaking powers."), with the broad-ranging power of federal courts to implement federal common law. When Congress delegates to courts the duty of elaborating statutory remedies, the traditional factors for inferring new rights are no longer of paramount importance.[12] *See Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U.S. 286, 290–91, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993); *id.* at 302, 113 S.Ct. 2085 (Thomas, J., dissenting); *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 645, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (allowing that a common-law elaboration of a right to contribution could be permitted when Congress "intended courts to have the power to alter or supplement the remedies enacted"); *Northwest*, 451 U.S. at 96 n. 35, 101 S.Ct. 1571 (observing that federal courts could properly find right to contribution without congressional authorization where statute provided "an authorization for judicial development of substantial federal law to govern those cases").

That is not to say that Congress' intention to benefit one class and not another is irrelevant to the existence of a right to contribution. If contribution would undermine the benefit of the statutory scheme for that class, or interfere with an express remedial plan drawn up by Congress for that class, contribution is inappropriate. In my earlier opinion, I took fully into account the fact that Congress intended to benefit the disabled, not those who discriminate against them, in enacting Title II. I determined, however, that a right to contribution actually extended the reach of the ADA, by drawing on the resources of principal defendants to identify and punish contributory violators whose misdeeds were hidden from plaintiffs. *See Bowers VIII*, 171 F.Supp.2d at 397. Thus, I find no "substantial ground" for disagreement with my opinion in U. Mass.'s first contention.

U. Mass. also argues, however, that my reading of the statutory purpose of Title II was at least plausibly erroneous in another respect. According to U. Mass., I should have considered the fact that no contribution is available under Title I in deciding the same question under Title II. The *Musick* court considered analogous portions of the Securities Acts in determining whether or not contribution was appropriate in actions under § 10(b). 508 U.S. at 294–97, 113 S.Ct. 2085. Other courts have from time to time looked to Title VII of the Civil Rights Act of 1964 in shaping remedies under Title VI of that statute. *See, e.g., Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 587–88, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983) (opinion of White, J.). In one respect, this argu-

---

**12.** In *Bowers VIII*, I relied expressly on Congress' grant of general common-law remedial authority to federal courts under Title II and the Rehab. Act. 171 F.Supp.2d at 395–96 n. 6.

ment does no more than restate U. Mass.'s first contention, since, after all, the reason that there is no right of contribution under Title VII is because there is already a congressionally designed remedial scheme in place. *See Northwest*, 451 U.S. at 93–94, 101 S.Ct. 1571. There might, however, conceivably be arguments that it would be fairer, or more consistent and predictable, for remedies under Title I and Title II to mirror each other as far as possible. While I do not find such arguments especially persuasive—it is utterly commonplace in our law for a right to be free from government discrimination to be more expansive than a comparable right to be free from private discrimination—they are not completely without merit.

U. Mass.'s second argument also suggests another important consideration in the amount of ground for disagreement *Bowers VIII* offers. The decision to create a right to contribution, as I have now stated repeatedly, is essentially a feature of federal common law. To be certain, my determination was highly informed by precedent. Yet I think it is inevitable that any common law decision, although constrained by principled readings of prior cases, offers room for interpretive differences based on different policy or value preferences. *See* Ronald Dworkin, *Law's Empire* 176–275 (1986). Thus, for example, another judge might conclude that the deterrent interests of the ADA are better served by larger judgments against single defendants, rather than smaller judgments apportioned out among multiple defendants. *See Judson v. Peoples Bank & Trust Co. of Westfield*, 17 N.J. 67, 88–89, 110 A.2d 24 (1954) (Brennan, J.) (discussing competing policy arguments). While that view is, I believe, no longer widely credited, I cannot say that it is entirely insubstantial.

Taking into account U. Mass.'s second contention, along with the inherent flexibility of common law decision-making, I conclude that there is "substantial ground for disagreement" with my conclusion that a right to contribution exists under Title II and the Rehab. Act. Accordingly, I will grant U. Mass.'s Motion for a Prescribed Statement. In view of my decision that this case must be stayed pending Memphis' appeal as of right, *see supra* Part II.C., I will deny U. Mass.'s motion to stay as moot.

## III. CONCLUSION

For the reasons set forth above, I shall deny U. Mass.'s Motion to Dismiss Temple's claims for contribution under Title II and the Rehab. Act, but grant U. Mass.'s Motion to Dismiss Temple's claim for contribution under the NJLAD. I will also dismiss Temple's claim for contribution under the NJLAD against DSU without prejudice to Temple's right to re-file in state court. In addition, I will grant Memphis's Motion to Stay Temple's claims pending resolution of Memphis's appeal. Finally, I will grant the Motions of U. Mass. and DSU for a Prescribed Statement under 28 U.S.C. § 1292(b), but deny their request for a stay pending that application. The Court will enter an appropriate form of Order.